UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SONYA BLACKWELL-FRIPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-04047-SLD-JEH |
| | ) |
| CHRISTINE WORMUTH, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Defendant Secretary of the Army Christine Wormuth's Motion for Summary Judgment, ECF No. 9. For the following reasons, the motion is GRANTED.

**BACKGROUND**[1]

I.  **Factual Background**

Plaintiff Sonya Blackwell-Fripp, who is African American, was employed as a GS-06 Practical Nurse at the Rock Island Arsenal ("RIA") Health Clinic (the "Clinic") for a 13-month term appointment lasting from September 2, 2018 to October 2, 2019. Her first-level supervisor was Sergeant First Class Eugenio Lolli, and Dr. Aaron Jacob was her second-level supervisor. During the hiring process, Plaintiff signed a Statement of Understanding providing, in relevant part:

> This position is a Term Not to Exceed 13 months. I understand that I am accepting a TERM appointment which does not afford any permanent status. I understand that this position may be converted to a permanent, competitive position, based on the needs of the organization. I understand that this conversion is not guaranteed.

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed materials facts, Def.'s Mem. Supp. Mot. Summ. J. 2–4, ECF No. 9-1; Plaintiff's statement of disputed material facts and additional material facts, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2–4, ECF No. 17-1; Defendant's reply to Plaintiff's additional material facts, Def.'s Reply 2–4, ECF No. 18; and exhibits to the filings.

Statement of Understanding, Def.'s Mot. Summ. J. Ex. 1 at 95, ECF No. 10-1 at 9.

In June 2019, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor and filed a claim against Lolli. The claim was later dismissed.

On September 13, 2019, Plaintiff received a memorandum stating that her term appointment would not be renewed beyond October 2, 2019. Lolli, Colonel Gordon Prairie, and Major Elizabeth Hamilton were the parties who made the decision not to extend Plaintiff's term appointment. Prairie and Hamilton did not work at the RIA; they worked at Blanchfield Army Community Hospital at Fort Campbell, Kentucky. No one was hired behind Plaintiff to fill her spot.

## II.     Procedural History

On October 3, 2019, the day after her term appointment ended, Plaintiff contacted the EEO office. She filed a formal complaint on November 15, 2019, alleging that Defendant's refusal to extend her term of employment constitutes race discrimination and retaliation for the charge of discrimination she filed with the EEO office in June 2019. The EEO office requested a final agency decision letter on June 4, 2020, but 180 days passed without agency action.

Plaintiff initiated this suit on March 15, 2021. Compl., ECF No. 1. She brings claims for race discrimination[2] (Count I) and retaliation (Count II). *Id*. at 3–5. Defendant now argues that she is entitled to summary judgment on both claims. Def.'s Mem. Supp. Mot. Summ. J. 6–12, ECF No. 9-1.

---

[2] While Count I is titled "[s]ex [d]iscrimination in [e]mployment," the text makes clear that Plaintiff intends to bring a claim for race discrimination. *See* Compl. 3 ("[D]efendant . . . discriminated against [P]laintiff on the basis of her race . . . ."); *id*. ("[P]laintiff has been treated differently than other similarly situated Caucasian employees . . . ."); *id*. at 4 ("[A]s a direct result of the acts of race discrimination in employment [P]laintiff has sustained damages . . . .").

2

## DISCUSSION

I. **Legal Standard**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where one party has properly moved for summary judgment, the nonmoving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties may not merely refer to their own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[3]

The court is to "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant*, 870 F.3d at 568. However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

---

[3] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

II.     Analysis

   a. Race Discrimination

In Count I of her complaint, Plaintiff claims that Defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17, by refusing to extend her term appointment. Compl. 3–4. 42 U.S.C. § 2000e-2(a)(1) provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." When evaluating a Title VII claim of employment discrimination at summary judgment, a district court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).[4] A plaintiff may cite to direct or circumstantial evidence of discrimination to show causation. *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Ortiz*, 834 F.3d at 765. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

---

[4] In the Seventh Circuit, courts "generally apply the same standards to Title VII and [42 U.S.C. §] 1981 race discrimination claims at the summary judgment stage." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013); *see also James v. Get Fresh Produce, Inc.*, No. 18 C 4788, 2018 WL 6199003, at *8 (N.D. Ill. Nov. 28, 2018) ("[T]he substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981."). Thus, the Court cites to § 1981 and Title VII cases interchangeably.

One method a plaintiff may use for "organizing, presenting, and assessing circumstantial evidence" in discrimination cases is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which

> the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer;

the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224–25 (7th Cir. 2017) (alteration in original) (quotation marks omitted).

Defendant argues that Plaintiff cannot make out a *prima facie* case under the *McDonnell Douglas* framework because she "cannot raise a dispute of material fact as to whether she was treated less favorably than a similarly-situated comparator outside her protected class." Def.'s Mem. Supp. Mot. Summ. J. 7–10. Furthermore, Defendant contends, "Plaintiff has identified zero direct evidence that her race was the reason her term was not extended." *Id.* at 10.

Plaintiff "concedes she does not have a prima facie case of race discrimination," as she "cannot identify a comparator." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 5, ECF No. 17-1. Nor does she identify any evidence in her response suggesting that race played a role in Defendant's failure to extend her term, making it impossible for a reasonable factfinder to conclude that her race was the reason her term was not extended. *See Ortiz*, 834 F.3d at 765. The Court thus grants summary judgment in Defendant's favor on Plaintiff's claim that the failure to extend her term constitutes race discrimination.

### b. Retaliation

In Count II, Plaintiff alleges that the failure to extend her employment was retaliation for her June 2019 EEO claim. Compl. 4–5. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an unlawful employment practice. To establish retaliation, a "plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).[5] In this context, causation means but-for causation. *Id*.

At summary judgment, "the plaintiff[] must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it could have." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). "[C]ausation can be established by circumstantial evidence," such as "suspicious timing, a pretextual explanation for the [adverse employment action], and evidence that similarly situated employees were treated differently." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018); *cf. Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (cautioning that while evidence of suspicious timing can be helpful to a finding of retaliation, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." (quotation marks omitted)). When the plaintiff has provided circumstantial evidence of a retaliatory motive, his employer may then show that the adverse employment action would have

---

[5] While courts previously distinguished direct from indirect evidence of causation when evaluating a claim of retaliation, the Seventh Circuit has "jettisoned that approach in favor of a more straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Lord*, 839 F.3d at 563.

been taken against the employee "even absent his [engaging in the protected activity]"—undercutting retaliation as the but-for cause of the adverse action. *Lord*, 839 F.3d at 564. However, the plaintiff can avoid summary judgment if he shows that a genuine dispute of material fact exists as to whether the employer's purported motive is pretextual. *Id.*

Plaintiff identifies three categories of evidence which she argues show that the non-extension of Plaintiff's term[6] was retaliatory. First, she asserts that Plaintiff's supervisors, Lolli and Jacob, had both expressed displeasure about the EEO system, and Lolli had "made comments about being thrown under the bus after [Plaintiff] filed her complaint," showing they were upset with her for contacting the EEO office. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 4, 7. Second, she notes that she was informed of the non-extension of her term approximately three months after she filed the EEO claim in June 2019, timing which she argues is suspicious. *Id.* at 6–7. Third, she points to a variety of evidence she believes shows that Defendant's purported reason for not extending her term is pretextual. *Id.* at 7–8.[7] The Court will address each category of evidence in turn before examining whether the evidence as a whole would be

---

[6] Defendant states that "[f]or purposes of this motion only, [she] assumes that the decision not to extend Plaintiff's term appointment qualifies as an adverse action under the Title VII standard." Def.'s Mem. Supp. Mot. Summ. J. 7. The Court likewise assumes for purposes of this Order that the failure to extend Plaintiff's term is an adverse employment action.

[7] In the statement of additional facts in her response to the motion for summary judgment, Plaintiff asserts that "[t]erm employees who were extended included Melissa Hoye, Johanna Olsen and Amy Mitton." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 3. This suggests that she may have intended to make the argument that she was treated disparately from similarly situated coworkers, but she never does. *See Nichols*, 755 F.3d at 600 ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Even if she had made that argument, she provides no information in her response about the positions these employees held, who their supervisors were, or whether they were otherwise similarly situated, nor does she state whether any of the three had prior EEO activity. As such, the Court would be unable to determine whether they would be adequate comparators. *See David*, 846 F.3d at 226 (noting that courts consider "whether the employees (i) held the same job description, (ii) were subject to the same standards, [and] (iii) were subordinate to the same supervisor" in determining whether employees are similarly situated (quotation marks omitted)); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) (finding that the plaintiff had failed to identify adequate comparators where "she point[ed] to no similarly situated individuals who did not engage in protected speech activity").

sufficient to permit a reasonable fact finder to determine that a retaliatory motive caused Plaintiff's non-extension.  *See Lord*, 839 F.3d at 563.

### i. Timing

Looking first to Plaintiff's evidence of timing, the Court finds that this factor is neutral. Plaintiff's "position [wa]s a Term Not to Exceed 13 months"—she knew from the first day of her employment at the Clinic that her term would expire on October 2, 2019.  *See* Statement of Understanding.  That she filed the relevant EEO claim three months before she was notified that her contract would not be extended could lend some support to her position, but without other evidence showing retaliation, evidence of the timing of the adverse action alone will not thwart summary judgment.  *See Coleman*, 667 F.3d at 861.

### ii. Statements by Jacob and Lolli

The Court next examines the statements purportedly made by Jacob and Lolli, addressing the evidence regarding Jacob first.  Plaintiff states in her initial declaration that Jacob was aware of her June 2019 EEO charge against Lolli because the EEO representative contacted him. Blackwell-Fripp Initial Decl. 3, Def.'s Mot. Summ. J. Ex. 1 at 154–161, ECF No. 11-1 at 5–12. She further asserts that Jacob made statements in front of staff about his dislike for the EEO program and that EEO staff had been sent to his clinic.  *Id*. at 7 ("Jacob constantly makes statements in front of staff about EEO being sent to his clinic and his dislike for the program.").

The Court finds that it cannot afford these statements any significance, even assuming Jacob made them.  The evidence shows that Lolli, Hamilton, and Prairie were the parties who decided not to extend Plaintiff's term.  *See* Lolli Decl. 3, Def.'s Mot. Summ. J. Ex. 1 at 162–167, ECF No. 11-1 at 13–18; Hamilton Decl. 2, Def.'s Mot. Summ. J. Ex. 1 at 184–187, ECF No. 12 at 8–11; Prairie Decl. 2, Def.'s Mot. Summ. J. Ex. 1 at 188–191, ECF No. 12 at 12–15.  Jacob

played no role in the decision, *see* Jacob Decl. 4, Def.'s Mot. Summ. J. Ex. 1 at 170–174, Ex. 11-1 at 21–25, and Plaintiff has not adduced any evidence that Jacob influenced the decision-makers in any way, which she must for his purported anti-EEO remarks to carry any weight in the Court's analysis. *Cf. Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011) (noting that "[w]ith sufficient evidence, [courts] permit juries to draw an inference that another employee's impermissible bias infected a decision when a plaintiff is able to show that the biased employee had some degree of influence over the ultimate decision").

Furthermore, she does not state when Jacob made these statements, and she does not argue that Jacob made comments about her specific EEO complaint. "Ambiguous comments . . . far removed from the adverse employment action are insufficient, without more, to defeat summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 569 (7th Cir. 2015) (finding that "generic, forward-looking remarks about loyalty would not permit a reasonable trier of fact to infer a causal connection between" the protected activity and the plaintiffs' terminations because "neither comment referred either explicitly or implicitly to the protected activity at issue" and "both comments were made long before any of the plaintiffs' terminations").

Turning to the evidence regarding Lolli, the Court finds that the comments Lolli allegedly made in response to the June 2019 EEO charge are relevant circumstantial evidence because he was one of the decision-makers. *See* Lolli Decl. 3. According to Plaintiff, Lolli, who had also been informed of the EEO claim by the EEO representative, "was upset that [she] filed a prior EEO activity," "made comments about being throwed [sic] under the bus after [she] filed [her] complaint," and "[f]or the most [h]e stopped speaking to [her] in the [C]linic." Blackwell-Fripp Initial Decl. 3, 7.[8] This could support an inference that Lolli was motivated to retaliate against

---

[8] Lolli disagrees that he made those statements in response to Plaintiff's EEO claim: he attests in his declaration that he made the comments in May 2019 after Plaintiff stated in a videoconference that she felt she was not getting any

9

her. But Plaintiff provides no evidence that he made those comments in connection with the decision not to extend her term (indeed, he made them more than three months prior to the decision being made, Blackwell-Fripp Resp. Decl. 3, Def.'s Mot. Summ. J. Ex. 1 at 175–179, ECF No. 11-1 at 26–ECF No. 12 at 3), nor does she cite to anything showing that Prairie[9] and Hamilton were aware of and influenced by his feelings, undermining the evidentiary value of these statements to a reasonable fact finder.[10]

### iii. Pretext

Finally, the Court addresses Plaintiff's argument that the reasons Defendant provided for her non-extension were merely pretext for retaliation. *See* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 7–8. "In determining whether the employer's reason can be characterized as pretextual, [courts] do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair"; rather, the "sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

---

support with a project she had been assigned. Lolli Decl. 4. This factual dispute is not dispositive, as even assuming Plaintiff's assertion is truthful, the Court finds that a reasonable factfinder could not conclude that retaliation was the cause for her non-extension.

[9] Plaintiff asserts in her initial declaration that Lolli "stated that he was informed to have minimal interactions with [her] by . . . Prairie" after she filed the EEO claim. Blackwell-Fripp Initial Decl. 7. If this is true, it shows that Prairie was aware of Plaintiff's EEO claim, but without more evidence, the Court will not engage in speculation as to why Prairie might have instructed Lolli to have minimal interaction with Plaintiff and whether such an instruction would have any bearing on Plaintiff's claim.

[10] Plaintiff also points to the declaration of nurse practitioner Heather Claus, with whom Plaintiff worked, that Claus believed that Plaintiff's EEO activity was a factor in the non-extension of her term. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 3 (citing Claus Decl. 2–3, Def.'s Mot. Summ. J. Ex. 1 at 196–199, Ex. 12 at 20–23 ("I believe [Plaintiff] was targeted because she spoke up to . . . Lolli in regard to many inconsistency [sic] in treatment and unfair favoritism with certain employees.")). But Claus was not one of the decision-makers, *see* Lolli Decl. 3; Hamilton Decl. 2; Prairie Decl. 2, and her statement shows nothing more than her subjective belief as to the reason Plaintiff's term was not extended, which is not relevant evidence. *See Brown*, 700 F.3d at 1108 (affirming a grant of summary judgment in favor of the employer where "the [employees'] argument for retaliatory animus relies entirely on speculation").

Defendant asserts that Plaintiff's term was not extended because pursuant to the 2017 National Defense Authorization Act ("NDAA"), the Clinic was to provide medical services to roughly one-third fewer clients, and it was determined that staff members would not be replaced as their terms ended, unless they were mission critical, to downsize the staff numbers through attrition. Def.'s Mem. Supp. Mot. Summ. J. 4, 11. Furthermore, the permanent employee who Plaintiff had been backfilling would be returning from active-duty military service soon. *Id*. at 11. The declarations of all three decision-makers support this explanation. *See* Lolli Decl. 3, 5; Hamilton Decl. 2; Prairie Decl. 2–4; *see also* Lolli Decl. 5 (noting that Plaintiff's "position [wa]s not mission critical according to command").

Plaintiff points to a variety of evidence she contends shows that these proffered reasons are false. The Court finds that she has failed to make this showing. In her response, she "[a]dmits" Defendant's factual statement that "the Clinic was being downsized due to the requirement in the 2017 [NDAA]" and that "the staff was being reduced . . . through regular attrition." *See* Def.'s Mem. Supp. Mot. Summ. J. 4; Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2. Moreover, none of the evidence to which Plaintiff points establishes that Lolli, Prairie, and Hamilton did not honestly believe the reasons they gave for not extending her term.

Plaintiff argues that, while the permanent employee Plaintiff had been backfilling—Cynthia Taylor—was originally scheduled to return shortly after the end of Plaintiff's term on October 2, 2019, Taylor informed Lolli and Jacob on September 26, 2019 that she had extended her active-duty service until May 2020, and Defendant's refusal to extend Plaintiff's term until Taylor came back shows that the justification for her non-renewal was pretext. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 7; *see* Blackwell-Fripp Initial Decl. 4. Plaintiff's argument fails to account for the directive to downsize the Clinic staff, which, as the Court already stated, she has

11

admitted was in place. As Prairie explained in his declaration, even though Taylor's expected return was pushed back to May 2020, the Clinic "already ha[d] a permanent incumbent in the position," and "[w]hether the incumbent returned/returns to work 6 months ago, now, or in 3 months[,] [they] should not have 2 individuals filling the same position." Prairie Decl. 3. This would be "in direct violation of the NDAA 2017 mandate." *Id.*; *see* Def.'s Reply 5, ECF No. 18 ("Plaintiff's opposition makes clear she believed the length of her appointment at the RIA Clinic was tied to the return of another nurse from active military service, but she was mistaken in thinking this was the only factor controlling whether her term would be renewed.").

 Plaintiff also argues that Defendant "never gave . . . notice of the decision to conduct a reduction in force to [Plaintiff] or any of the other employees in the [C]linic," which, Plaintiff asserts, was required pursuant to Army Regulation 690-300 Section 20-22. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 4, 6. Army Regulation 690-300 Section 20-22 provides that "[c]ompeting employees will be given specific advance notices of at least 60 full days before the effective date of the [reduction in force] action." Army Regulation 690-300 § 20-22, Def.'s Mot. Summ. J. Ex. 1 at 235–311, ECF No. 12-1 at 28–ECF No. 14 at 29. Plaintiff does not expound on why a failure to follow this notice requirement would support her pretext argument. Nor does she explain why she believes that Section 20-22 applies to this particular situation, and without more clarification as to the details of the plan to reduce staff numbers at the Clinic through normal attrition, the Court does not believe it can affirmatively conclude that Section 20-22 governs here. *See* Def.'s Reply 4 (disagreeing with Plaintiff's conclusion that Section 20-22 applied and stating that "[t]here is no evidence that a formal reduction in force process was underway").

Even if some notice to employees were required, Lolli states in his declaration that "the staff was notified back in April 2019, that staff would not be replaced once left unless it was mission critical." Lolli Decl. 5. In support of her assertion that no Clinic employees were informed of Defendant's new policy, Plaintiff cites only to her own response declaration, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 4, 6, in which she attests that she was not "given any notification of [*her*] contract not being renewed due to downsizing." Blackwell-Fripp Resp. Decl. 3 (emphasis added). But she never states that Defendant failed to inform the Clinic staff generally of the decision not to replace departing employees going forward. As such, even if Plaintiff was not specifically told that one of the reasons her term would not be extended was Defendant's non-renewal policy, she has not adequately disputed that Lolli generally informed the staff in April 2019 that non-mission-critical term employees would not be replaced as their terms ended—more than sixty days before the decision not to extend Plaintiff was made.

Plaintiff also points out in her response that the Clinic was facing a staffing shortage and suggests that this undermines Defendant's reason for not extending her term. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 6. But a shortage of nurses is entirely consistent with Defendant's purported policy to decrease staff numbers—there would naturally be a period of transition during which the number of employees would decline, as Defendant did not replace those who left or whose terms expired, until the staff had reached two-thirds of its former size.[11]

Finally, Plaintiff asserts that the clinic posted an opening for a licensed practical nurse ("LPN") position after failing to extend Plaintiff's term, which "contradicts . . . Prairie's claim that the [C]linic was eliminating the nursing position." Pl.'s Mem. Supp. Resistance Mot.

---

[11] Plaintiff also argues that "[o]n September 27, 2019 the nurse practitioner Heather Claus directly asked Sergeant Lolli given the fact that they were going to have such nursing shortages why he wouldn't extend [Plaintiff's] term and Lolli would not answer her." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 6. Plaintiff does not explain what the Court should infer from this and how it supports her claim of a retaliatory motive.

13

Summ. J. 3–4, 6, 8. She cites only to the declaration of Heather Claus, a nurse practitioner with whom Plaintiff worked at the Clinic, in which Claus states that the "[C]linic has a great need for another LPN and in fact there is an approved hiring action for a term LPN at this time." Claus Decl. 3, Def.'s Mot. Summ. J. Ex. 1 at 196–199, Ex. 12 at 20–23. This is the only information provided about the LPN position—it is unclear whether, for example, this new position was mission critical or whether Plaintiff would have been qualified to fill the post. Moreover, it is undisputed that no one was hired to fill the vacancy Plaintiff left, *see* Def.'s Mem. Supp. Mot. Summ. J. 4 (citing Lolli Decl. 3; Jacob Decl. 3), *see also* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2 (admitting Defendant's statement); the position remained empty until Taylor's return.

### iv. Evidence as a Whole

Examining the evidence in the light most favorable to Plaintiff, the Court does not find that a reasonable fact finder could conclude, based on one statement purportedly made by Lolli (months before the decision and without any apparent connection to it or to the other two decision-makers) that he felt that Plaintiff had thrown him under the bus with her EEO complaint, and where Defendant has proffered a legitimate non-pretextual reason for the action, that "a retaliatory motive *actually* influenced the decision-maker." *See Brown*, 700 F.3d at 1108 (noting that it is not sufficient at summary judgment for a plaintiff to provide evidence that a retaliatory motive "*could* have" influenced the decision-maker). As such, Defendant is entitled to summary judgment on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment, ECF No. 9, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 8th day of March, 2022.

                                                              s/ Sara Darrow
                                                              SARA DARROW
                                        CHIEF UNITED STATES DISTRICT JUDGE